**Dissenting opinion issued August 8, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00863-CR

————————————

**CHARLES LEE FARRIS, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1530897**

---

## DISSENTING OPINION

Article I, section 10 of the Texas Constitution declares: "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury." This provision originated in the 1836 Texas Declaration of Rights and remains in the Texas Constitution to this day. *See* John Cornyn, *The Roots of the Texas*

*Constitution: Settlement to Statehood*, 26 TEX. TECH. L. REV. 1089, 1096 (1995) [hereinafter *Roots*]; Whitney R. Harris, *Jury Trial in Civil Cases—A Problem in Constitutional Interpretation,* 7 SW. L.J. 1, 2–3 & n.5 (1953).

Neither the Texas Legislature nor the Court of Criminal Appeals has directly confronted section 10's clear and absolute mandate. Instead, Texas courts have interpreted article I, section 15—the general right to trial by jury applicable to both criminal and civil proceedings—in a way that ignores section 10's distinct guarantee. That interpretation, which the majority believes requires it to reject Farris's appeal, is not faithful to its plain language, its historical purpose, or its meaning in the context of the Constitution as a whole.

## I.     Plain Meaning: Article I, Section 10 is an Absolute Mandate

The Court of Criminal Appeals has failed to address section 10's plain language, despite its stated adherence to the principle of interpretation—endorsed by the legislature—that courts should focus on the literal text of a provision in order to determine its meaning and resort to other means only when the literal text is unclear or its application would lead to absurd results. *See Stine v. State*, 908 S.W.2d 429, 431 (Tex. Crim. App. 1995) (citing *Hernandez v. State*, 861 S.W.2d 908, 909 (Tex. Crim. App. 1993), and *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)); *see, also* TEX. GOV'T CODE § 311.016 ("'Shall' imposes a duty."). The rule of interpretation that the specific provision prevails over the general also requires

adherence to article 1, section 10's mandate in Old Code felony cases. *See, e.g.*, *Hatch v. State*, 958 S.W.2d 813, 823 (Tex. Crim. App. 1997) (Overstreet, J., dissenting) (disagreeing with the majority's application of a Government Code provision over the Code of Criminal Procedure provision that adequately addressed the specific issue of jury composition in criminal cases).

## II.    Historical Purpose of Article I, Section 10

Both high Courts in this State have expressed the importance of interpreting the contours of a constitutional right by examining its origin in historical context. *See Ex parte Garner*, 246 S.W. 371, 371 (Tex. Crim. App. 1922) (Texas Constitution's right to jury trial under article I, section 15 must be understood in historical context); *accord Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 526 (Tex. 1995) (concluding that the right to trial by jury under article I, section 15 of the Texas Constitution applied to "those actions, or analogous actions, tried by jury when the Constitution was adopted in 1876"). "Texas courts have often noted that the primary goal in the interpretation of a constitutional provision is to ascertain and give effect to the apparent intent of the voters who adopted it," because "'the constitution does not derive its force from the [framers], but from the people who ratified it.'" *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 585 (Tex. Crim. App. 1993) (quoting T. Cooley, CONSTITUTIONAL LIMITATIONS 66 (1868)).

3

### A. The scope of the constitutional jury trial mandate

When the Republic of Texas came into existence, neither the Common Law nor the United States Constitution allowed an accused to waive trial by jury; the standard practice for a judge was to discourage a defendant from pleading guilty and to encourage trial by jury. *See Patton v. United States*, 281 U.S. 276, 306 (1930); *see also* Stephen A. Siegel, *The Constitution on Trial: Article III's Jury Trial Provision, Originalism, and the Problem of Motivated Reasoning*, 52 SANTA CLARA L. REV. 373, 380–81 (2012) ("There was near-universal agreement among late-nineteenth and early-twentieth century judges" that article III, section 2 of the federal constitution, providing that "trial of all crimes except in cases of impeachment shall be by jury," was an absolute mandate, and neither a prosecutor nor an accused could avoid a jury trial, whether by unilateral waiver or mutual consent.) (hereinafter *Constitution on Trial*).

In the late-19th century, it was unsettled whether the jury trial requirement instilled in the Common Law tradition and imposed by the federal constitution applied to misdemeanors. *See Dickinson v. United States*, 159 F. 801, 805 (1st Cir. 1908). The United States Supreme Court resolved this issue under the federal constitution in *Schick v. United States*, holding that article 3, section 2 of the Constitution did not require a jury trial in misdemeanor prosecutions. 195 U.S. 65, 69 (1904). Relying on Blackstone's Commentaries, the Court noted that the English

4

Common Law used the term "crimes" in two ways: generally, to mean all criminal conduct, and specifically, to mean felonies, as opposed to petty offenses. *Id.* Blackstone distinguished between "crimes" and "misdemeanors," using "crimes" to signify offenses of "a deeper and more atrocious dye" and "misdemeanors" to refer to "smaller faults and omissions of less consequence." *Id.* at 69–70 (quoting 4 William Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND 5 (1769)). By statute, Texas followed the same rule. *See Johnson v. State*, 48 S.W. 70, 71 (Tex. Crim. App. 1898) (relying on former TEX. CODE CRIM. PROC. art. 571, which allowed for plea of guilty in misdemeanor cases by either defendant or defense counsel, in holding that defendant's guilty plea to misdemeanor theft charge was admissible in burglary case).[1]

The Texas Penal Code of 1856 (commonly referred to as the "Old Code") was the State's first codification of Common Law crimes. Part II of the Old Code listed the "Offences and Punishments." Though some of the offenses listed in the Old Code are no longer part of today's jurisprudence, many of the felony crimes it lists,

---

[1]     At that time, Texas authorized trial courts to accept a plea of guilty to a felony charge within statutorily-imposed limits, and only if "it plainly appear[ed] that [the defendant] is sane, and is uninfluenced by any consideration of fear, by any persuasion or delusive hope of pardon, prompting him to confess his guilt." *Johnson v. State*, 48 S.W. 70, 71 (Tex. 1898) (citing former TEX. CODE CRIM. PROC. arts. 554, 555, 570). And, even if the guilty plea met those conditions, a defendant still could not waive trial: unless the felony had a fixed punishment, a jury trial on punishment still was required. *See id.*

including aggravated assault, rape, kidnapping, and murder, are still codified as felony crimes. With respect to the felony crimes listed in the Old Code in 1876 and still codified as felony crimes today, the Texas Constitution states a mandate for conducting jury trials in their prosecution.

## B.      Resistance to Mexican Rule

Before 1836, while Texas was still under Mexican rule, the colonists who had emigrated from the United States, who were accustomed to Common Law rules, resisted the differences in Mexican civil law. George C. Butte, *Early Development of Law and Equity in Texas*, 26 YALE L.J. 699, 700 (1917). In addition, colonial Texans were frustrated with the concentration of judicial power in the local magistrates, caused in part by Texas's distance from the supreme tribunal in the Mexican state of Coahuila, which left the colonists effectively without judicial recourse in important civil and criminal cases. *See Roots*, 26 TEX. TECH. L. REV. at 1106.  The denial of the Common Law right to trial by jury, among other reasons, provided sufficient cause for Texas to undertake its war for independence.  W. Wendell Hall & Mark Emery, *Texas Hold Out: Trends in the Review of Civil and Criminal Jury Verdicts*, 49 S. TEX. L. REV. 539, 544 (2008) (quoting *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 786 n.217 (Tex. 2005)).

When Texas declared its independence from Mexico, the Republic's constitution was drafted with an eye toward eliminating some of the problems the

Texans had with the Mexican system of government. *Roots*, 26 TEX. TECH. L. REV. at 1106. The Republic established Common Law district courts in 1837, and the public greeted their "[c]ourt sessions . . . with great enthusiasm." James W. Paulsen, *A Short History of the Supreme Court of the Republic of Texas*, 65 TEX. L. REV. 237, 244 (1986). In drafting the current Texas Constitution, the delegates to the 1875 constitutional convention distanced themselves from empowered government as exemplified by the federal constitution, having "more faith that the courts, rather than other state authorities, would protect individual liberties." James C. Harrington, *Framing a Texas Bill of Rights Argument*, 24 ST. MARY'S L.J. 399, 405 (1993).

### C. Early efforts to limit trial by jury in the American legal system

Beginning in the second half of the nineteenth century, a pronounced anti-jury trial sentiment grew among certain lawyers, legislators and reformers. *See generally* Andrew Kent, *The Jury and Empire: the Insular Cases and the Anti-Jury Movement in the Gilded Age and Progressive Era*, 91 S. CAL. L. REV. 375, 394–406 (2018) [hereinafter *Jury and Empire*] (explaining the increase of criticism and efforts to reform the jury system, which coincided with high immigration from southern and eastern Europe and attendant concerns of "disorder and social disintegration"). A "newly positive view of the Roman-derived civil law tradition," which had minimized the use of juries, may also have played a role in the push for jury reform or abolition on a national level, though Texas's experience under Mexican rule

suggests that view would not have received the same welcome here. *Id.* at 404; *see Roots*, 26 TEX. TECH. L. REV. at 1106.

In 1930, the United States Supreme Court first held that a defendant could constitutionally waive the right to jury trial in a felony case, despite the federal constitution's clear mandate that "the trial of all Crimes . . . shall be by Jury." U.S. CONST. art. III; *Patton*, 281 U.S. at 306. *Patton* reached this result by reading the Sixth Amendment's right to jury trial as eclipsing the Article III mandate and applying a "remarkably wrong" historical analysis. *Constitution on Trial*, 52 SANTA CLARA L. REV. at 418; *see Patton*, 281 U.S. at 298–311.

When *Patton* was decided, the Texas Code of Criminal Procedure expressly prohibited waiver of a jury trial in a felony case. TEX. CODE CRIM. PROC. (1925) art 11; *see* Note, *Criminal Procedure—Waiver of Trial by Jury*, 9 TEX. L. REV. 90, 91 (1930). The following year, though, and despite article I, section 10's mandate, the Texas legislature amended the statute to permit waiver of a jury trial by a defendant upon pleading guilty to a noncapital felony. *See* S.B. 53, 42nd Leg., R.S., Acts 1931, ch. 43, *cited in Hatch v. State*, 958 S.W.2d 813, 815 (Tex. Crim. App. 1997). The Texas legislature has continued to expand the circumstances under which waiver is permitted; under the current statute, a defendant may waive a jury trial in all noncapital cases and capital cases where the prosecution does not seek the death penalty. TEX. CODE CRIM. PROC. arts. 1.13, 1.14. Neither the legislature nor the

courts have offered any reasonable explanation for defying the constitutional requirement of a jury trial in Old Code felony prosecutions.

## III. Article I, Section 10 in the Context of the Whole Constitution

Contrary to the current judicial interpretation of article I, section 10, which renders it a nullity, this provision complements the other sections of the Texas Constitution that speak to jury trials and mandates the use of the jury trial process for Old Code felony prosecutions. The Texas Constitution has three provisions that delineate the mandate and the right to jury trial: article I, sections 10 and 15, and article V, section 13. But research has revealed no decision by the Court of Criminal Appeals that considers the effect of article I, section 10's plain mandate in an Old Code felony prosecution, and none of the decisions cited by the majority concerns a defendant who claimed he was deprived of a jury trial; thus, none addresses the Texas Constitution's mandate of jury trials in Old Code felony cases. *See Jacobs v. State*, 560 S.W.3d 205, 210–11 (Tex. Crim. App. 2018) (claiming violation of right to impartial jury due to limits placed on voir dire questioning); *Niles v. State*, 555 S.W.3d 562, 573 (Tex. Crim. App. 2018) (agreeing with reversal of conviction for Class A misdemeanor terroristic threat, which requires finding that offense was committed against public servant, based on failure to obtain jury finding on complainant's public servant status; but holding that this was charge error and remanding to court of appeals for harm analysis); *Uranga v. State*, 330 S.W.3d 301,

304 (Tex. Crim. App. 2010) (claiming that violation of right to trial by impartial jury based on implied bias doctrine); *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998) (claiming error in removal of juror for cause violated right to trial by impartial jury); *Marquez v. State*, 725 S.W.2d 217, 243 & n.9 (Tex. Crim. App. 1987) (challenging the exclusion of prospective jurors based on opposition to death penalty violated right to trial by impartial jury); *see also Dabney v. State*, 60 S.W.2d 451, 451 (Tex. Crim. App. 1933) (considering effect of article I, section 10 in appeal of conviction for theft of chickens, apparently a misdemeanor, for which punishment of 60 days' confinement was assessed); *Lee v. State*, 215 S.W. 856, 856–57 (Tex. Crim. App. 1919) (observing that Texas Constitution did not mandate jury trial for prosecution of juvenile because charged offense was not a felony); *Schulman v. State*, 173 S.W. 1195, 1195 (Tex. Crim. App. 1915) (holding that established rule in Texas allowed defendant to waive jury or agree to jury of fewer than six jurors in misdemeanor prosecution); *Moore v. State*, 2 S.W. 634, 635 (Tex. App. 1886) (holding that statute allowing for waiver of jury trial in misdemeanor cases did not conflict with article I, section 10). As in the context of the civil jury trial right,

> in spite of long judicial experiences in applying [the pertinent constitutional provisions] to cases in which the right to trial by jury has been contested, a formula of interpretation which gives full effect to the terminology and purposes of each section has yet to appear in the decisions.

*Jury Trial*, 7 Sw. L.J. at 3 n.5.

I agree that article I, sections 10 and 15 should be interpreted together. This long line of cases, however, shows a tendency to subsume section 10 under section 15 despite the importance of its mandate and its specific application to criminal proceedings for Old Code felonies. Although article I, section 15 authorizes the legislature to pass laws to regulate the same, and to maintain its purity and efficiency, it is axiomatic that the clause "does not permit reduction of the right" of an accused to trial by jury or impairment of its substance. *Ex parte Johnson*, 697 S.W.2d 605, 614 (Tex. Crim. App. 1985) (Clinton, J., dissenting).

Like the majority, I recognize that the Court of Criminal Appeals has interpreted article I, section 10 as not requiring a jury trial in every felony criminal prosecution, many of which did not exist under the Old Code. I believe, however, that the interpretation is consistent with enforcing the unequivocal and specific mandate as expressed in the constitution with respect to Old Code felonies.

**Conclusion**

Some will argue that an acknowledgment by the Court of Criminal Appeals of the mandate contained in article I, section 10 of the Texas Constitution requiring jury trials in all prosecutions for Old Code felony crimes would be a major disruption to the Texas criminal justice system and would place Texas in a unique position among the other states in the Union—I agree on both counts. Texas is large, and Texas has never shied away from taking actions that distinguish it from other states.

11

The fact that this striking, mandatory requirement stems from the earliest constitution of the Republic of Texas only emphasizes the importance that Texans place on the mandate for and the right to jury trials.

The defendant in this case was charged with murder, an Old Code felony crime. As to Old Code felony crimes like murder, article I, section 10 of the Texas Constitution means exactly what it says. Because he did not receive the jury trial mandated by that section, his conviction should be reversed.

For these reasons, I dissent from this court's decision to affirm the judgment of the trial court, and I would reverse and remand for trial by jury in the court below.

Gordon Goodman
Justice

Publish. Tex. R. App. P. 47.4.