

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-91,714-02

### In re GARY DAVID GREEN, Relator

### ON PETITION FOR WRIT OF MANDAMUS
### IN CAUSE NO. 13-10-U1040-CAM
### IN THE 112th JUDICIAL DISTRICT COURT
### UPTON COUNTY

 SCHENCK, P.J., filed a dissenting opinion in which YEARY, J., joined except Part 2.

## O P I N I O N

The Court today has found that Judge Ables maintained and breached a ministerial duty to rescind his order removing Judge Wright and that Government Code § 74.053(d) is inapplicable to criminal cases.  I dissent as to both conclusions.  As detailed below, I disagree with the Court's reliance on earlier precedent that rejected the plain language of the operative statute.  I also disagree with the Court's

directing mandamus relief at Judge Ables as he clearly had the authority to enter the order at issue regardless of his rationale.

## I. WHEN CONSTRUING A STATUTE WE SHOULD ADHERE TO THE STATUTORY TEXT.

Texas Government Code Section 74.053 addresses the authority of "visiting judges" to preside over proceedings in the trial courts as against the expressed objections of those appearing before them. *See* TEX. GOV. CODE ANN. § 74.053. In 2003, the statute was amended to allow litigants in all "cases" to object to the assignment of a visiting judge who was defeated at the ballot box. *See* Act of Sept. 1, 2003, 78th Leg., R.S., ch. 315, § 10, sec. 74.053, 2003 Tex. Gen. Laws 1337, 1339 (codified at TEX. GOV. CODE ANN. § 74.053(d)).

This Court has never before substantively interpreted the 2003 version of this statute. Instead of doing so today, the Court simply resuscitates our earlier decision in *Lanford v. First Court of Appeals*,[1] and extends it to the later revisions, explaining that "[k]ey aspects of the statute that was construed in *Lanford* remain the same in the present version of the statute." Maj. Op. at 11. But *Lanford* was wrongly decided because the Court departed from traditional rules of statutory construction. Its error has become only more apparent in light of the subsequent revision of the statute.

---

[1] *Lanford v. First Court of Appeals*, 847 S.W.2d 581 (Tex. Crim. App. 1993).

In all events, the error in *Lanford's* construction of the earlier version of the statute would be sufficiently important (and obvious) on its own to warrant its reversal notwithstanding principles of stare decisis, even if the Legislature had not revised it in the interim.

### A.    Lanford *Incorrectly Read the Statute*

In *Lanford*, our Court considered the 1991 version of Texas Government Code Section 74.053(d), including its legislative history.  The parties, the lower courts, and Presiding Judge McCormick all agreed that the language of the provision was plain.  The Court in *Lanford*, however, rejected their view.  Instead, noting what it described as the potential "absurd results" that might follow from adherence to the text, the Court went on to embrace an unspoken intention to preclude parties in criminal cases from having any right to object to the assignment of a visiting judge under any circumstance.  The Court's construction also necessitated it reaching an entirely avoidable constitutional challenge that it may have also mishandled.

At the time of the *Lanford* decision, the plain language of subsection (b) read, if a "party *to a civil case* files a timely objection to the assignment, the judge shall not hear the case.  *Except as provided by subsection (d)*, each party to *the case* is only entitled to one objection under this section for that case." Act of June 16, 1991, 72nd Leg., R.S., ch. 785, § 2, sec. 74.053, 1991 Tex. Gen. Laws 2782 (amended 2003) (current version at TEX. GOV. CODE ANN. § 74.053). (emphasis added).

Meanwhile, subsection (d) read, a "former judge or justice who was not a retired judge may not sit in a case if either party objects to the judge or justice." *Id.*

To state the obvious, subsection (b) was its own section and dealt with the assignment of a judge who had served sufficiently long (and honorably)[2] to qualify to retire and sit as a visiting judge. Subsection (d) dealt with a different, potentially more acute problem: the assignment of a judge who had not served sufficiently long to be "retired" either by early resignation or by removal by the will of the voters. Unlike subsection (b), subsection (d) did not limit itself to "civil cases" but applied to any "case" in which a "party objects." In 2003, the Legislature further sharpened the reach of subsection (d). It now reads: "[a]n assigned judge or justice *who was defeated in the last primary or general election for which the judge or justice was a candidate* for the judicial office held by the judge or justice *may not* sit *in a case* if either party objects to the judge or justice." TEX. GOV'T CODE ANN. § 74.053(d) (emphasis added).

The *Lanford* opinion rejected the notion that having written two separate sections dealing with different objects and expressly reaching "civil cases" in the first instance and "cases" in the second was sufficient to answer the question of

---

[2] *See* TEX. GOV'T CODE ANN. § 74.055(c)(4) (excluding former judges who have been publicly reprimanded for misconduct or who resigned in lieu of discipline from service as visiting judge).

whether the sections were meant to be different. It instead noted that where "literal application of the statute's plain text would lead to absurd results" the resort to "extratextual factors" would be in order. *Lanford*, 847 S.W.2d at 587.

The listed extratextual factors were, if anything, far more absurd than the results driven by the plain legislative text.

First, the Court was concerned that allowing parties to criminal cases to object to a visiting judge who was not retired might lead to visiting judges being reticent to rule against the state in view of risking revenue opportunities arising from further appointments. Saying the quiet part out loud, if we are concerned that visiting judges may alter their rulings based on the prospect of future appointments, why would we permit them in any case? And why would we assume that the visiting judge would not share like concerns when appointed in civil cases involving large local law firms or business interests? Isn't the point of permitting the parties to strike such a judge to avoid that very concern? If so, isn't *Lanford*'s solution of depriving the parties involved in criminal matters of any ability to object a much greater problem?

Second, the Court observed that recognizing subsection (d)'s textual reach to all "cases" might result in continuances. This "water is wet" observation is presumably within the knowledge of both parties whose interests are at stake. A defendant's speedy trial rights will embrace any intervening delay and any further concern over continuances can be avoided by assigning a judge qualified to sit or

any visiting judge who is retired. *See Barker v. Wingo*, 407 U.S. 514, 529 (1972). Thus, the Legislature, by separating subsections (b) and (d), had already resolved any prospect of multiple continuances.

Finally, having rejected the plain text, the Court plowed forward to tackle the constitutional question of whether or where the Texas Constitution authorized the appointment of a visiting judge, including and especially one who had been removed by the voters. I will not attempt to describe the Court's efforts in this regard other than to say other arguments may have been available and the question was one that would have been avoided by embracing the plain language of the legislative text. *Lanford*, 847 S.W.2d at 587.

### B. Lanford*'s Construction Has Not Improved with Age*

To its credit, the majority today searches for further support from *Lanford's* "extra-textualism" in two respects. Neither persuades.

The majority first points to principles of grammar and syntax—to wit, that subsection (d) is referenced in (and thus somehow) inextricably linked to subsection (b) so as to limit subsection (d)'s explicit use of "cases" to mean only "civil cases." In particular, the majority urges the revisions reflected in subsection (d) failed to "alter the structure of the statute" as construed in *Lanford* and thus the holding in *Lanford* remains unchanged. The answer to this is obvious: the Legislature didn't alter the reach of the statute, *Lanford* simply misread it. That the Legislature further

narrowed and sharpened the reach of subsection (d) does nothing to support *Lanford* at all. On the contrary, it reinforced the notion that subsection (d) reached a different, more acute problem.

To be direct, the majority focuses too much on *Lanford* and the past and not enough on the text and the present, and in the process ignores the fact that the final changes in the 2003 statute *only* affected subsection (d), which stands alone as a separate provision. The reference to subsection (d) in subsection (b), by which an unlimited number of objections would be available to litigants in civil and criminal cases, essentially disappears in this erroneous resort to grammar and linkage. Subsections (b) and (d) deal with different problems and have different applications.

To this I will add that the Legislature chose to place all of this text not in the Texas Civil Practice and Remedies Code, but in Chapter 74 of the Government Code, also known as the Court Administration Act. The Court Administration Act differentiates between civil courts and criminal courts of our state in certain scenarios within its ten subchapters through the plain language of a handful of sections. To simply assume that subsection (d) automatically and only relates back to *and is limited to* subsection (b) thwarts the purpose and intent of not only the text containing those distinct subsections, but all of Chapter 74 of the Government Code.

However one describes it, this reading would leave no reason for either subsection to exist without the other, ignores the plain text and series of textual

canons, including the whole-text, distributive-phrasing, interpretive-direction, and the subordinating-superordinating canons. That seemed obvious to the parties, the lower courts, and my predecessor before *Lanford*, and seems just as obvious to me today.

The majority also suggests the Legislature would have altered the rest of the statute if it disagreed with the *Lanford* interpretation. The majority further cites the lack of available legislative journal entries, bill abstracts, audio and video recordings making mention of criminal cases as additional, if silent, evidence of its satisfaction with the *Lanford* holding.

The majority's observation that the Legislature amended Section 74.053 without expressly objecting to our ruling in *Lanford* or acting affirmatively against it is perhaps its strongest effort. Still, this invocation of the so-called acquiescence canon fails for several reasons. First, and most obviously, the acquiescence notion— that "no one told me how wrong I was last time"—is a feeble canon that, when tested, reveals it is not designed to displace the text either before or after an amendment absent actual evidence the Legislature was even aware of the decision at issue. *See* William N. Eskridge, Jr., *Interpreting Legislative Inaction*, 87 MICH. L. REV. 67, 71 (1988). I agree with Justice Scalia's observation that "we should admit that vindication by [legislative] inaction is a canard" and move on. *Johnson v. Transp.*

*Agency, Santa Clara Cnty., Cal.*, 480 U.S. 616, 672 (1987) (Scalia, J., dissenting, joined by Rehnquist, C.J.).

To the extent we operate on *the assumption* that those drafting legislation are studying our past interpretations, I would note the majority's own reference to the lack of any actual legislative history supporting this notion—a weakness it shares incidentally with the original *Lanford* opinion.

If we are to resort to the notion of "implied" acquiescence, I would then "call" this latest round and "raise" it with the text of the Texas Constitution and this Court's past reading of it, to which I assume the Legislature is more likely attentive. The Texas Constitution reflects an appreciation of a separate treatment of civil and criminal matters repeatedly, including in the treatment of courts, judges and attorneys. First and foremost, the constitutional distinction between the operations of the various departments of government comes in its only freestanding article, Article II. TEX. CONST. art. II, § 1. There it decrees that *all,* not *some,* of the executive, judicial and legislative powers are assigned exclusively to each respective department *except* as specifically authorized later in the constitutional text. As we recently observed, the Texas Constitution provides in Article V, Section 21 governing the judicial department:

> The County Attorneys shall represent the State *in all cases* in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney,

the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature.

*Id.* art. V, § 21.

This Court has interpreted the reference to "cases" in this provision to include not only civil cases in which counties might be involved, like local tax and boundary disputes, but criminal cases brought in the name of the State as well. *See Meshell v. State,* 739 S.W.2d 246, 254 (Tex. Crim. App. 1987). This being the case, if one is to *assume* that the Legislature is paying attention to our rulings, it would be at least as aware of that constitutional text and our reading of it in *Meshell* in 1987 when dealing with the far more mundane topic of which visiting judges assigned to "cases" might be subject to objection.

## II. LANFORD IGNORED THE CONSTITUTIONAL CONCERNS THE TEXT AVOIDED

Separately, and quite apart from the reading compelled by the text, its stated objects and their respective placement, *Lanford*'s results-driven reading may have actually created further problems that would (and should) be avoided by the constitutional doubt cannon.

As our sister court explained, "[t]he Legislature created the Section 74.053 right...to further a party's interest in having their case heard by a locally elected or retired judge that had 'met "the test of time" with the voters.'" It cited *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436 (Tex. 1997), which noted the legislative

intent behind Section 74.053 was to "have the right to have a locally elected judge decide their case." *In re Houston Lighting & Power Co.*, 976 S.W.2d 671 (Tex. 1998). Though decided in a civil context, the ruling supports the contention that the Legislature enacted subsection (d) as an entirely separate section to protect the will of the voters, and not to extend the intent of subsection (b).

The Supreme Court explained our republican form of government as described in Article IV, Section 4 of the federal Constitution as having "the distinguishing feature of . . . the right of the people to choose their own officers for governmental administration." *In re Duncan*, 139 U.S. 449, 461 (1891); *see* U.S. CONST. art. IV, § 4. In Texas, this includes electing our judges. Thus, a reading of subsection (d) that avoids possibly depriving Texans of their constitutional right to representation by the elected officials their ballots sent to office (or at least did not remove) is a more prudential focus when interpreting the statute.[3] The alternative reading of Section 74.053(d) I suggest—and as the Legislature wrote it—supports this presupposition, and would avoid the constitution question, and concomitant risk

---

[3] I accept that the reference to judges as "representatives" of those who elect them is fraught with peril. I do not mean to suggest that they might succumb to the temptation to seek approval in their rulings, *contra Lanford, ante,* but the framers of our Constitution gave the right to the *voters* and citizens to select the officers who would wield the power to determine their fates. That delegation and that right is what ought to be driving our assumptions about legislative and judicial actions. That those selecting judges actually have a cognizable right of "representation" as recognized in federal voting rights law is at least consistent with this concern. *See Houston Lawyers' Ass'n v. Attorney Gen.*, 501 U.S. 419 (1991).

of constitutional error, altogether. *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988).

When drafting Section 74.053, the Legislature was presumably aware of the sensitivity to the rights of litigants involved in civil cases *and* criminal cases, such as the case at hand. Thus, the drafters added the separate subsection (d) to avoid a reading of the statute allowing appointment of a judge whom the voters had just rejected at the ballot box or who may have otherwise been removed from office in advance of some form of discipline. Holding the Legislature's silence in the years following *Lanford* to give the voter/litigant in a slip-and-fall case the right to unlimited objections to such judges, and no such objection when his life or liberty is at stake in a criminal trial, is absurd and presses needlessly on a raw constitutional nerve. For that reason, I would agree with our colleagues on the Texas Supreme Court and read the Legislature's revision of subsection (d) in 2003 as to reflect its placement, text, and operation, thus upholding the right of the criminal defendant, rather than disenfranchising him.

While *Lanford* purported to address that constitutional concern, as noted above, *ante* at 6, it did not even attempt to speak to the problem beyond citing to the constitutional authority conferred on the State Commission on Judicial Conduct to pursue discipline charges against former judges and authorizing legislative efforts to recall retired (but not electorally defeated) judges. The existence of that body and

that authority of course has nothing to do with the issue of whether a party in a criminal or civil case should be permitted to object to a judge the voters had just removed. Neither does *Lanford* acknowledge or account for the potential state or federal equal protection concerns stemming from what it declared as the legislative intent to provide conspicuously disparate treatment of civil and criminal litigants in this regard.

### A. Stare Decisis Does Not Limit Our Ability to Correct *Lanford's* Interpretation

Stare decisis is not an "inexorable command" forcing courts to follow precedent while simultaneously performing "the art of methodically ignoring what everyone knows to be true."[4]  However one looks at stare decisis norms, *Lanford* fails the test and should be rejected.[5]

The nature of this Court's *Lanford* decision potentially disrupts the democratic process by removing the right of the voters to representation by the people they voted into (or out of) office in cases of the highest personal importance.

---

[4] *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1405 (2020).

[5] As the majority correctly notes, factors in support of overturning precedent include "(1) that the original rule or decision was flawed from the outset, (2) that the rule's application produces inconsistent results, (3) that the rule conflicts with other precedent, especially when the other precedent is newer and more soundly reasoned, (4) that the rule regularly produces results that are unjust, that are unanticipated by the principle underlying the rule, or that place unnecessary burdens on the system, and (5) that the reasons that support the rule have been undercut with the passage of time." Maj. Op. at 14 (citing *Grey v. State*, 298 S.W.3d 644, 646 (Tex. Crim. App. 2009)).

It subjects civil and criminal litigants to wholly disparate treatment in this regard, was wrongly decided at the outset, and has grown only weaker as the Legislature focused in on the right to make unlimited strikes of the defeated-but-back-to-visit judges. The notion that the Legislature secretly cheered for its ruling limiting subsection (d)'s separate existence, purpose, and reference to "cases" as being limited to only civil cases, ignores not only the text and canons driving its interpretation, but still other evidence of acquiescence on a longer and more significant scale in an opposite direction.

*Lanford* staggers sadly near the edge of a very tall cliff of text, logic, and reason. The kind thing is not to pretend the world has been cheering it on, but to give it a push and allow the statutory text to prevail.

## III. MANDAMUS WOULD NOT BE PROPER HERE REGARDLESS OF THE *LANFORD* QUESTION

I also disagree with the majority's opinion that the decision by the regional presiding judge is amenable to mandamus correction. As the majority agrees, Judge Ables maintained the ministerial power to appoint Judge Wright as well as the ministerial power to appoint Judge Reed. He also exercised that discretion in interpreting Section 74.053(d) and appointing the latter.

"[M]andamus relief is available only when the relator can establish two things: first, that no other adequate remedy at law is available; and second, that the

act he seeks to compel is ministerial." *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994) (citing *Braxton v. Dunn,* 803 S.W.2d 318, 320 (Tex. Crim. App. 1991)). "An act is ministerial 'when the law clearly spells out the duty to be performed . . . with such certainty that nothing is left to the exercise of discretion or judgment.'" *Id.* (citing *Texas Dept. of Corrections v. Dalehite*, 623 S.W.2d 420, 424 (Tex. Crim. App. 1981)).

Section 74.053(d) clearly allows the process of both the appointment and removal of habeas judges of which Relator now complains. Certainly, nothing in that section purported to foreclose his effort to eliminate the debate by simply appointing a different visiting judge. If Judge Ables had the authority to appoint either judge—and he clearly did—any reason he gave for doing so could not divest him of that discretion or somehow subject him to mandamus "correction." *See Martell v. State*, 663 S.W.3d 667, 672 (Tex. Crim. App. 2022). The fact that his spoken understanding adheres to the text of the statute hardly alters that result.

## CONCLUSION

I would read Section 74.053(d) to give effect to each of its subsections and follow the text therein—avoiding constitutional concerns that may otherwise arise from disparate treatment of criminal defendants. In all events, I would not direct mandamus relief, conditional or otherwise, to a regional presiding judge whose appointment is within the discretion assigned to him.

Filed: May 28, 2025

Publish