**The Honorable Norman LANFORD, Relator,**

v.

**The FOURTEENTH COURT OF APPEALS, Respondent.**

No. 71,484.

Court of Criminal Appeals of Texas, En Banc.

Feb. 17, 1993.

582

Stanley G. Schneider, W. Troy McKinney, Houston, for relator.

John B. Holmes, Jr., Dist. Atty., and Calvin A. Hartmann and J. Harvey Hudson, Asst. Dist. Attys., Houston, for the real parties in interest.

Robert Huttash, State's Atty., Austin, for State.

## OPINION ON RELATOR'S APPLICATION FOR WRIT OF MANDAMUS

CAMPBELL, Judge.

On March 10, 1992, Norman Lanford, the elected judge of the 339th District Court of Harris County, lost his bid for reelection in the Republican Primary. On July 3 of that year, Lanford resigned from his office as district court judge. Also on July 3, the presiding judge of the Second Administrative Judicial Region, acting pursuant to

Texas Government Code § 74.054, assigned Lanford to sit as a visiting "former judge" in the 185th District Court of Harris County starting July 6, 1992.[1]

On the morning of July 6, Harris County District Attorney John B. Holmes, Jr., filed a written objection in each criminal case appearing on the 185th District Court's docket giving notice of his opposition, under Texas Government Code § 74.053(d), to Lanford presiding in that case.[2] A hearing on Holmes' objections was held later on the morning of July 6 before Carl Walker, Jr., the elected judge of the 185th District Court. Lanford's testimony at that hearing established—as both he and Holmes now agree—that Lanford did not qualify as a "retired judge" under Texas law.

On the afternoon of July 6, Judge Walker overruled Holmes' objections and announced that Lanford would preside in the criminal case of *State v. Michael Wayne Penrice* beginning July 7. On the morning of July 7, before the commencement of proceedings in *Penrice*, Holmes re-urged his objection before Lanford himself. Lanford overruled the objection, and the trial in *Penrice* commenced.

Holmes then sought a stay and mandamus relief in the Fourteenth Court of Appeals, contending that Lanford had a minis-terial duty to step down once Holmes made his objection under § 74.053(d). Holmes also argued, for the first time, that Lanford had no right to sit because the assignment of former judges violated the Texas Constitution. The court of appeals granted a stay of the proceedings in *Penrice* on July 7, and on August 10 the court lifted the stay and conditionally granted a writ of mandamus, on the basis of § 74.053(d), ordering Lanford to step down. *State ex rel. Holmes v. Lanford*, 837 S.W.2d 705 (Tex. App.—Houston [14th Dist.] 1992). The court of appeals did not reach Holmes' constitutional argument. With respect to the meaning of § 74.053(d), the court of appeals reasoned thusly:

> The question is whether "a case" in subsection (d) refers to "a civil or criminal case." We hold that it does.... [S]ection 74.053, absent specific language to the contrary, is applicable to both civil and criminal cases as part of the Court Administration Act contained in Chapter 74 [of the Government Code]. While subsection (b) provides an express civil exception for objections to the assignment of regular or retired judges, the "Except as provided by subsection (d)" language takes subsection (d) completely out of subsection (b). Thus, "a case" refers to "a civil or criminal case," in the

---

1. Texas Government Code § 74.054 provides in relevant part that "a former district or appellate judge ... who certifies ... a willingness to serve" "may be assigned [to hold court] by the presiding judge of the administrative region in which the assigned judge resides."

2. Before it was amended by the Legislature in 1991, Texas Government Code § 74.053 read as follows:

   (a) When a judge is assigned under this chapter the presiding judge [of the relevant administrative judicial region] shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or part by the assigned judge.
   (b) If a party to a civil case files a timely objection to the assignment, the judge shall not hear the case. Each party to the case is only entitled to one objection under this subsection for that case.
   (c) An objection under this section must be filed before the first hearing or trial, including pretrial hearings, over which the assigned judge is to preside.

   As amended in 1991, § 74.053 now reads:

(a) When a judge is assigned under this chapter the presiding judge [of the relevant administrative judicial region] shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or part by the assigned judge.
(b) If a party to a civil case files a timely objection to the assignment, the judge shall not hear the case. *Except as provided by Subsection (d)*, each party to the case is only entitled to one objection under this *section* for that case.
(c) An objection under this section must be filed before the first hearing or trial, including pretrial hearings, over which the assigned judge is to preside.
*(d) A former judge or justice who was not a retired judge may not sit in a case if either party objects to that judge or justice.*
(Emphasized portions changed or added by 1991 amendments.)

absence of specific language in subsection (d) to the contrary. If the Legislature had intended to limit the applicability of section 74.053 exclusively to civil cases, it could have simply added the words "in a civil case" to the beginning of subsection (d).

\* \* \* \* \* \*

Both parties have provided us with an extensive review of the legislative history surrounding the statutes authorizing judicial assignments. Unfortunately, that history provides little guidance on the issue of whether the Legislature intended subsection (d) to apply exclusively to civil cases. The legislative history does, however, reflect the Legislature's concern over opposition to the assignment of judges, particularly former judges who are not retirees and who have been defeated for reelection, as Respondent Lanford is here. That concern was not restricted to civil cases....

\* \* \* \* \* \*

Our conclusion is supported by the plain language of the applicable provision and is in harmony with the intent of the Court Administration Act, as enacted in Chapter 74.

*State ex rel. Holmes v. Lanford,* 837 S.W.2d at 709–711.

Immediately after the court of appeals handed down its decision, Lanford asked this Court for a stay and a writ of mandamus ordering the court of appeals to rescind its order granting conditional mandamus relief. On August 18, 1992, we stayed the order of the court of appeals and granted Lanford leave to file an application for writ of mandamus.

In his application to this Court, Lanford argues, *inter alia*, that the court of appeals abused its discretion in granting Holmes relief because "the clear and precise language" of § 74.053 makes subsection (d) applicable only to civil cases. More specifically, Lanford contends that

the Court of Appeals fail[ed] to address the reference in subsection (b) of the statute to subsection (d) as an exception to the provisions of subsection (b).

Therefore, the Court of Appeals failed to reconcile the express language of the statute that subsection (d) is an exception to the limit on the right to disqualify judges in civil cases only provided in subsection (b).

Holmes argues, on the other hand, that [t]he grammatical configuration of the statute ... does not support [Lanford's] contention. By its own terms, subsection (b) yields to the provisions found in subsection (d). Subsection (b) states that its application is subservient to the terms of subsection (d). In other words, subsection (d) sets forth a preeminent *general* objection, and subsection (b) sets forth a specific civil adaptation to that objection.

(Emphasis in original.) Holmes also argues that this Court has no jurisdiction to entertain this proceeding; that the court of appeals properly granted mandamus relief because the assignment of former judges to sit as visiting district court judges violates the Texas Constitution; and that, in any event, this Court should deny mandamus relief because Lanford has another adequate legal remedy.

**I**

■ Initially, we must address our jurisdiction to entertain this original mandamus proceeding. Article 5, § 5, of the Texas Constitution provides in relevant part that, "[s]ubject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue ..., in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari." Holmes argues that this proceeding does not involve a "criminal law matter" because "[t]he orderly assignment of judges is a concern which is peculiarly within the province of the Texas Supreme Court." As authority for this proposition, Holmes cites Article 5, § 31(a), of the Texas Constitution, which provides:

The Supreme Court is responsible for the efficient administration of the judicial branch and shall promulgate rules of administration not inconsistent with the laws of the state as may be necessary

for the efficient and uniform administration of justice in the various courts.

Thus, we must determine whether the phrase "criminal law matters," as used in Article 5, § 5, encompasses the issue of Lanford's right to preside by assignment over a criminal trial.

Texas courts have often noted that the primary goal in the interpretation of a constitutional provision is to ascertain and give effect to the apparent intent of the voters who adopted it. See, e.g., *Edgewood I.S.D. v. Kirby*, 777 S.W.2d 391, 394 (Tex.1989); *Williams v. Castleman*, 112 Tex. 193, 247 S.W. 263, 265 (1922); see C. Antieau, *Constitutional Construction* § 3.01 (1982). "[T]he intention of the framers of a constitution is of but little importance—the real question being, what did the people intend by adopting [the constitutional] language submitted to them?" *Smissen v. State*, 71 Tex. 222, 9 S.W. 112, 116 (1888). Judge Thomas Cooley explained this point of law long ago:

> [A]s the constitution does not derive its force from the [framers], but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.

T. Cooley, *Constitutional Limitations* 66 (1868).

In determining the scope of the constitutional phrase "criminal law matters," we do not write on a completely clean slate. In *Smith v. Flack*, 728 S.W.2d 784 (Tex.Cr. App.1987), four court-appointed criminal defense attorneys sought a writ of mandamus from this Court compelling the Harris County Auditor and Commissioners Court to pay the attorneys their fees, which had been awarded by a district court pursuant to Article 26.05 of the Texas Code of Criminal Procedure. Thus, we were called upon to determine whether the enforcement of an order issued pursuant to a provision of the Texas Code of Criminal Procedure was a "criminal law matter." We held that it was, reasoning that Article 5, § 5, "grants this Court the power to issue writs of mandamus when a criminal law is the subject of the litigation." 728 S.W.2d at 788; see also *Smith v. Flack*, 728 S.W.2d at 794 (Clinton, J., concurring). Our statement in *Smith v. Flack*, however, was not intended to be a definitive statement of the meaning of "criminal law matters." Nor is it necessary for us to make a definitive statement today.

In our view, average voters reading the phrase "criminal law matters" at the time of its adoption would probably have interpreted it to encompass, at a minimum, all legal issues arising directly out of a criminal prosecution. Thus, we conclude without difficulty that the constitutional phrase "criminal law matters" does encompass, and this Court does have jurisdiction over, the issue presented by Lanford's application.[3] See *Smith v. Flack*, 728 S.W.2d 784; *Weiner v. Dial*, 653 S.W.2d 786 (Tex.Cr. App.1983). We therefore turn to a consideration of the merits of Lanford's claim.

## II

"[M]andamus is a drastic remedy, to be invoked only in extraordinary situations." *State ex rel. Sutton v. Bage*, 822 S.W.2d 55, 57 (Tex.Cr.App.1992). Consequently, we will issue a writ of mandamus

---

**3.** The gist of Holmes' argument is that since the Texas Supreme Court has power and authority over the assignment of judges, Lanford's claim amounts to a civil law matter, leaving this Court without jurisdiction. Undoubtedly, this argument would have had merit before the passage of the amendment to Article 5, § 5, in 1977, because this Court principally reviewed criminal convictions before that time. But since the amendment, this Court has had the power to issue writs of mandamus, procedendo, prohibi-

tion, and certiorari in criminal law matters. Thus, we necessarily have the power to decide what constitutes a criminal law matter. And in making that determination, we are not bound by the fact that there may be civil law facets to the issue at hand, anymore than the Texas Supreme Court, in determining whether a matter is civil in nature, is bound by the fact that the matter may be quasi-criminal. See, e.g., *Robinson v. Hill*, 507 S.W.2d 521 (Tex.1974).

commanding a court of appeals to rescind its own writ of mandamus only if the relator in this Court can demonstrate two things: first, that the relator has no other adequate legal remedy; and second, that under the relevant law and facts, the court of appeals clearly abused its discretion when it granted the writ. *Ater v. Eighth Court of Appeals*, 802 S.W.2d 241, 243 (Tex.Cr.App.1991); *Dickens v. Second Court of Appeals*, 727 S.W.2d 542, 549–550 (Tex.Cr.App.1987).

Certainly, there is no remedy at all via petition for discretionary review from an adverse ruling in an original mandamus proceeding. *Jacolos v. State*, 692 S.W.2d 724, 725 (Tex.Cr.App.1985). So that route is closed to Lanford. Holmes maintains, however, that Lanford has an adequate remedy via a declaratory judgment action in civil district court.[4] We disagree. The filing of a civil suit with regard to *other* potential judicial assignments would have no effect on the determination of the question presented here, i.e., whether Lanford may preside in *Penrice*. Lanford has already obtained a district court judgment in his favor in the *Penrice* case, and the court of appeals assumed jurisdiction and rendered a decision adverse to him with respect to that case. Under these circumstances—and pursuant to our holding in *Jacolos*—Lanford's only option is to seek a writ of mandamus overturning the court of appeals decision. Having determined that Lanford has no other adequate legal remedy, we turn next to the question of whether the court of appeals clearly abused its discretion in granting Holmes a writ of mandamus.

## III

■ It is settled that a court of appeals clearly abuses its discretion when it grants a writ of mandamus absent a proper basis. *Ater v. Eighth Court of Appeals*, 802 S.W.2d 241; *Dickens v. Second Court of Appeals*, 727 S.W.2d at 553. A proper basis exists if the relator in the court of appeals can show two things: first, that he has no other adequate legal remedy; and second, that under the relevant law and facts, he has a clear legal right[5] to the relief sought. *Buntion v. Harmon*, 827 S.W.2d 945, 947 (Tex.Cr.App.1992). Thus, if Holmes did not demonstrate in the court of appeals that he had a clear legal right to the relief sought under either § 74.053(d) or the Texas Constitution, then it necessarily follows that the court of appeals clearly abused its discretion when it granted him mandamus relief.

### A

■ When we interpret a statute such as § 74.053(d), our constitutional duty is to ascertain and give effect to the apparent intent of the legislators who voted for it. *Camacho v. State*, 765 S.W.2d 431, 433 (Tex.Cr.App.1989). When attempting to discern this apparent legislative intent, "we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.

---

4. Texas Civil Practice and Remedies Code § 37.-004(a) provides in relevant part that "[a] person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction ... arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder."

5. As we explained in *Buntion v. Harmon*, 827 S.W.2d 945, 947, n. 2 (Tex.Cr.App.1992):

This requirement [of a clear legal right] has often been couched in terms of requiring that the judicial conduct from which relief is sought be "ministerial" in nature: "Historically, this Court has stated that to be entitled to the extraordinary relief of mandamus, the re-

lator must establish ... (1) that the act sought to be compelled is purely *ministerial,* as opposed to discretionary or judicial in nature...." *Stearnes v. Clinton*, 780 S.W.2d [216,] 219 [ (Tex.Cr.App.1989).]

\* \* \* \* \* \*

A "ministerial" act is one which is clearly compelled by the facts and legal authority extant in a given situation. Moreover, a so-called "discretionary" function may become "ministerial" when the facts and circumstances dictate but one rational decision.... Thus, a *theoretically* discretionary act may nonetheless be "ministerial" in *application* if the facts and circumstances of a given case lead to but one rational course of action. (Emphasis in original.)

Cr.App.1991). We must ask ourselves, how would ordinary legislators have understood the statutory text? *Fogo v. State*, 830 S.W.2d 592, 594–595 (Tex.Cr.App.1992). "[I]f the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning." *Boykin v. State*, 818 S.W.2d at 785 (footnote omitted). If, on the other hand, literal application of a statute's plain text would lead to absurd results, or if the text is not plain but rather ambiguous, then we may legitimately consider, in arriving at a sensible interpretation, such extratextual factors as legislative history or the probable consequences of a particular interpretation. *State v. Muller*, 829 S.W.2d 805, 808 (Tex.Cr.App. 1992).

■ After reading § 74.053(d) in context, we cannot agree with the court of appeals and the parties that the meaning of it is "plain." Indeed, we conclude that subsection (d) is classically ambiguous, as the polar interpretations of the court of appeals and the parties, set out previously, would suggest. In other words, the text of subsection (d), read literally and in context, is capable of being understood in two ways: that it applies to civil cases only, or to civil *and* criminal cases. Compare *Boykin v. State*, 818 S.W.2d 782; *Smith v. State*, 789 S.W.2d 590 (Tex.Cr.App.1990).

Although the text of subsection (d), when read in context, is ambiguous, a consideration of extratextual factors leads us to conclude there is little likelihood the legislators who voted for subsection (d) intended for it to apply to criminal cases. First, before the 1991 amendments to § 74.053, subsection (b) clearly applied only to civil cases, and there is absolutely nothing in the legislative history of the 1991 amendments suggesting anyone intended for sub-

section (d) to apply to civil *and* criminal cases.

Second, since the State is necessarily a party to all criminal prosecutions, an extension of the right to peremptorily challenge former judges to criminal cases would give the State inordinate power, a consequence we doubt the legislators had in mind when they voted for subsection (d). For example, giving the State such power might cause judges to hesitate in ruling against the State lest they jeopardize their own future livelihood. Giving the State such power could also result in the virtual nullification of the administrative presiding judges' power of assignment.

Finally, an extension of the right to peremptorily challenge former judges would enable both prosecutors and defense counsel to get automatic continuances any time there was a former judge presiding in a case. This could result in incarcerated defendants spending even more time in overcrowded county jails—a situation radically different from that in civil cases, wherein continuances may cause delay, inconvenience, or loss of income but seldom loss of liberty. Again, we think it unlikely that the legislators who voted for subsection (d) had such a result in mind. For these reasons, we interpret § 74.053(d) not to apply to criminal cases. Thus, Holmes was not entitled to mandamus relief on the basis of § 74.053(d).

### B

■ Holmes also argues that Lanford could not lawfully preside over *Penrice* because no provision in the Texas Constitution allows for the assignment of former judges to sit as visiting judges in district courts. Again, however, we conclude that Holmes' argument is in error. Texas Constitution article 5, § 1–a(6)(C) does refer, albeit indirectly, to the assignment of former judges.[6] It seems to us that ordinary

---

**6.** Texas Constitution article 5, § 1–a(6)(C) provides:

The law relating to the removal, discipline, suspension, or censure of a Justice or Judge of the courts established by this Constitution or created by the Legislature as provided in this Constitution applies to a master or magis-

trate appointed as provided by law to serve a trial court of this State and to a retired or *former Judge who continues as a judicial officer subject to an assignment to sit on a court of this State.* Under the law relating to the removal of an active Justice or Judge, the Commission [on Judicial Conduct] and the

voters reading that constitutional provision at the time of its adoption would have necessarily interpreted it to authorize, by implication, the assignment of former judges.

Since neither § 74.053(d) nor the Texas Constitution afforded Holmes a clear legal right to have Lanford step down, the court of appeals clearly abused its discretion in granting Holmes mandamus relief. Furthermore, since Lanford has no other adequate legal remedy, he is entitled to a writ of mandamus from this Court ordering the court of appeals to rescind its mandamus relief in favor of Holmes. As is our custom, we will withhold issuance of the writ and accord the court of appeals an opportunity to conform its actions to this opinion. Only if such action is not taken will the writ of mandamus issue.

CLINTON, Judge, concurring.

In my judgment this is a "criminal law matter" within the intendment and meaning of Article V, § 5, simply because the District Attorney of Harris County made written objection to Relator's sitting in a criminal prosecution being pursued by assistants of the District Attorney, contending that a statute in the Government Code is applicable in a criminal case.

Furthermore, in my judgment the statute in question plainly applies to assigned judges in *civil* cases only, keeping in mind that subsection (c) contemplates "the first hearing or trial, including pretrial hearings over which the assigned judge is to preside."

The first sentence of subsection (b) expressly provides that "a party to a *civil* case" may file a timely objection to the assignment and thereby automatically prevent an assigned judge from hearing "the *case*."

Under the second sentence before amendment each party to *"the case"* was "only entitled to one objection ... for that *case*." The only "case" could be what the

review tribunal may prohibit a retired or *former Judge* from holding judicial office in the future or *from sitting on a court of this State by assignment.*

first sentence identifies as a *"civil* case." After amendment that "one objection" rule became subject to the exception "provided by subsection (d)."

In adding subsection (d) as an "exception" to the "one objection" limitation in the second sentence of subsection (b), the Legislature did not manifest any intent to enlarge the character and extend the scope of "civil cases" prescribed in subsection (b). Rather, it seems clear enough to me, the Legislature made it possible for "a party to a *civil* case" to object to a "former judge" (who is not "a retired judge") from sitting in any subsequent phase of a *civil* case after the first hearing, any other pretrial hearings or trial.

For those reasons I agree with the Court that the District Attorney has not shown a clear legal right effectively to object and thereby to prevent Relator from sitting in the criminal case involved. Thus I join the judgment of the Court.

McCORMICK, Presiding Judge, dissenting.

Believing the Court of Appeals correctly decided the issue here presented, I respectfully dissent. The majority notes that "there is absolutely nothing in the legislative history of the 1991 amendments suggesting anyone intended for subsection (d) to apply to civil *and* criminal cases." (Op. at 587, emphasis in original.) Likewise, there is nothing in that history suggesting the Legislature intended to exclude criminal cases from the application of subsection (d).

Whatever arguments would support this procedure in civil cases would, I believe, be equally applicable to criminal cases. Further, the Legislature has made obvious distinctions between former and retired judges. The jeopardy the majority foresees in the Court of Appeals' analysis applies as well to civil matters.

(Emphasis added.)

I would adopt the Court of Appeals' analysis in all respects.