

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-91,714-02

### In re GARY DAVID GREEN, Relator

### ON PETITION FOR WRIT OF MANDAMUS
### IN CAUSE NO. 13-10-U1040-CAM IN THE 112TH JUDICIAL DISTRICT COURT
### UPTON COUNTY

**PARKER, J., delivered the opinion of the Court in which RICHARDSON, NEWELL, WALKER, and MCCLURE, JJ., joined. SCHENCK, P.J., filed a dissenting opinion in which YEARY, J., joined except as to part II. FINLEY, J., concurred. KEEL, J., dissented.**

### **OPINION**

Under certain circumstances, Government Code § 74.053(d) requires that a visiting judge be removed from the case if a party objects. In *Lanford*, this Court held that the statute applied only to civil cases.[1] Although the statute has since been amended, the amendment did not change the statute in a way that would affect *Lanford*'s reasoning. Further, we conclude that there is not sufficient justification for overruling *Lanford*. Consequently, we hold that the statute continues to

---

[1] *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 586-87 (Tex. Crim. App. 1993).

apply only to civil cases. This means that the administrative presiding judge was incorrect to remove the visiting judge under that provision and that Relator is entitled to mandamus relief.

## I. BACKGROUND

Relator was found guilty of capital murder and sentenced to death. An opinion affirming his conviction on direct appeal has been handed down today and is not yet final.[2] While his direct appeal was pending, Relator filed an initial habeas application.[3] In addition, Relator filed a motion to recuse the district judge, Maria Teresa Herr, from presiding over post-conviction proceedings. That motion was granted, and no one has complained about that action. Afterwards, the Honorable Stephen B. Ables, Presiding Judge of the Sixth Administrative Judicial Region, assigned former Judge Eugenia Wright, who had previously been a county-court-at-law judge in Bexar County, to preside over the habeas proceeding. The District Attorney objected to Judge Wright's assignment pursuant to Texas Government Code § 74.053(d). Sustaining the objection, Judge Ables assigned a different visiting judge, Senior Bexar County District Judge Susan D. Reed, to preside over the habeas proceeding.

Contending that Judge Ables was without authority to grant the State an automatic veto over the assignment of the habeas judge, Relator sought mandamus relief. We stayed the habeas proceeding and solicited responses.[4] Judge Ables responded that he perceived the language of § 74.053(d) to apply to criminal cases and to be "mandatory." He further stated, "I honored the strike

---

[2] *Green v. State*, ___ S.W.3d ___, No. AP-77,088 (Tex. Crim. App. May 28, 2025).

[3] *See* TEX. CODE CRIM. PROC. art. 11.071.

[4] *In re Green*, No. WR-91,714-02 (Tex. Crim. App. October 9, 2024) (order) (not designated for publication)

and appointed Judge Reed to preside. I and the other presiding judges welcome your opinion on this matter." The State contends that *Lanford* no longer controls because the statute has been amended. The State also contends that Wright did not possess sufficient qualifications to preside over a capital habeas proceeding. We grant leave to file and turn to the merits of the mandamus application.

## II. ANALYSIS

### A. Mandamus Standards

To obtain mandamus relief, a relator must show two things: (1) that he lacks an adequate remedy at law, and (2) that the act he seeks to compel is "ministerial."[5] The ministerial-act requirement is satisfied if the relator can show a clear right to the relief sought.[6] A clear right to relief is shown "when the facts and circumstances dictate but one rational decision under unequivocal, well-settled, and clearly controlling legal principles."[7] These principles are derived from extant statutory, constitutional, or case law sources.[8]

An issue of first impression can qualify for mandamus relief if the law is otherwise clear.[9] This can be true when a statute at issue is unambiguous or when a proposition of law is clearly established by "the combined weight of our precedents."[10] But mandamus "will not lie to resolve

---

[5] *State ex rel. Ogg*, 692 S.W.3d 481, 484 (Tex. Crim. App. 2024).

[6] *Id.*

[7] *Id.*

[8] *State ex rel. Young v. Sixth Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007).

[9] *In re Meza*, 611 S.W.3d 383, 389 (Tex. Crim. App. 2020).

[10] *Id.*

a hotly contested unsettled question of law"[11] and "is not the proper vehicle to settle unsettled law."[12]

## B. Lack of Adequate Remedy

Citing a Texas Supreme Court decision, Relator contends that he does not have to show that he lacks an adequate remedy for a question that involves § 74.053(d). Our sister court has said, "Mandamus is available to compel a judge's mandatory disqualification upon proper objection without a showing that the relator lacks an adequate remedy by appeal."[13] But Relator does not seek to compel a mandatory disqualification; he seeks the opposite—to compel the withdrawal of such a disqualification. The right to compel removal and the right to block removal might well be asymmetrical—similar to challenges for cause in the jury selection context, where higher priority is given to a complaint about a trial court's refusal to remove a juror than to a complaint about the removal of a juror.[14] Moreover, we do not always agree with the Texas Supreme Court on mandamus standards,"[15] and we analyzed the adequate-remedy-at-law issue when we addressed § 74.053(d) in *Lanford*.[16]

---

[11] *In re Smith*, 665 S.W.3d 449, 454 (Tex. Crim. App. 2022).

[12] *In re Medina*, 475 S.W.3d 291, 305 (Tex. Crim. App. 2015).

[13] *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex. Crim. App. 1997).

[14] *See Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998) (Under a policy of liberally granting challenges for cause, "the erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury.").

[15] *Contrast supra* at nn.11, 12 (no mandamus relief when law is unsettled) *with In re Gonzales*, 619 S.W.3d 259, 261 (Tex. 2021) ("A trial court that fails to properly apply a statutory requirement abuses its discretion because courts have no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled.") (internal quotation marks omitted).

[16] *See* 847 S.W.2d at 586.

In any event, we need not decide whether there is an exemption from the lack-of-adequate-remedy requirement. There is no specific vehicle for appealing the disqualification of a judge,[17] and there is no "appeal" within the context of Article 11.071 proceedings, since this Court is the decision-maker.[18] To the extent it could be argued that this matter could be addressed by this Court as a motion in the habeas proceedings, the issue is currently before us, and we could simply treat this mandamus petition as such a motion,[19] which would, ironically, subject the issue to less onerous standards than for mandamus. For purposes of this opinion, however, we will assume, but not decide, that the administrative presiding judge's decision cannot be challenged via a mere motion in the habeas proceedings. Under that assumption, Relator has met the requirement that he show the absence of an adequate remedy.

### C. Ministerial Duty

#### 1. *Lanford* held that the prior version of the statute applied only to civil cases.

At the time *Lanford* was decided, § 74.053 provided:

(a) When a judge is assigned under this chapter the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or part by the assigned judge.

(b) If a party to *a civil case* files a timely objection to the assignment, the judge shall not hear *the case*. *Except as provided by Subsection (d)*, each party to *the case* is only entitled to one objection under this section for that case.

---

[17] *See State ex rel. Rodriguez v. Marquez*, 4 S.W.3d 227, 228 (Tex. Crim. App. 1999) (observing that the State had no right to appeal purported disqualification of judge under TEX. GOV'T CODE § 74.053(b) "primarily because the State has no right to appeal in bond forfeiture cases").

[18] *See* TEX. CODE CRIM. PROC. art. 11.071, §§ 8(d), 9(f), 11.

[19] *Cf. Ex parte Knight*, 401 S.W.3d 60, 66 (Tex. Crim. App. 2013) (referring to this Court previously treating a habeas application as a mandamus petition under appropriate circumstances).

(c) *An objection under this section* must be filed before the first hearing or trial, including pretrial hearings, over which the assigned judge is to preside.

(d) A former judge or justice who was not a retired judge may not sit *in a case* if either party objects to the judge or justice.[20]

The *Lanford* court found subsection (d) to be "classically ambiguous" because it was "capable of being understood in two ways"—applying to civil cases only or to both civil and criminal cases.[21] In support of this conclusion, *Lanford* referred back to the parties' arguments.[22] The visiting judge had argued that subsection (b)'s reference to subsection (d) as an exception made subsection (d) an offshoot of subsection (b)—limiting subsection (d) to civil cases.[23] The State had contended that the "except" clause made subsection (b) subservient to subsection (d), resulting in subsection (d) setting forth the preeminent general objection and subsection (b) setting forth a specific civil adaptation of that objection.[24]

*Lanford* then looked at the statutory history of § 74.053, by looking at the text before the 1991 amendment. Before 1991, the statute provided:

---

[20] TEX. GOV'T CODE § 74.053 (LEXIS 1993) (emphasis added).

[21] 847 S.W.2d at 587.

[22] *Id.*

[23] *See id.* at 584 ("the Court of Appeals fail[ed] to address the reference in subsection (b) of the statute to subsection (d) as an exception to the provisions of subsection (b). Therefore, the Court of Appeals failed to reconcile the express language of the statute that subsection (d) is an exception to the limit on the right to disqualify judges in civil cases only provided in subsection (b).") (bracketed material in *Lanford*).

[24] *See id.* ("the grammatical configuration of the statute . . . does not support [Lanford's] contention. By its own terms, subsection (b) yields to the provisions found in subsection (d). Subsection (b) states that its application is subservient to the terms of subsection (d). In other words, subsection (d) sets forth a preeminent general objection, and subsection (b) sets forth a specific civil adaptation to that objection.") (ellipsis and bracketed material in *Lanford*).

(a) When a judge is assigned under this chapter the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or part by the assigned judge.

(b) If a party to a civil case files a timely objection to the assignment, the judge shall not hear the case. Each party to the case is only entitled to one objection under this subsection for that case.

(c) An objection under this section must be filed before the first hearing or trial, including pretrial hearings, over which the assigned judge is to preside.[25]

As can be seen, subsection (d) did not exist before 1991. The *Lanford* court observed that the pre-1991 version of § 74.053 "clearly applied only to civil cases" and that nothing in the legislative history suggested that anyone intended the added subsection (d) to apply to both civil and criminal cases.[26]

*Lanford* also considered the consequences of a particular construction and concluded that construing § 74.053(d) to apply to criminal cases gave rise to two detrimental consequences. First, the Court concluded that applying the statute to criminal cases would give the State—a party to every criminal case—an inordinate power to exclude judges.[27] The Court thought that such power could discourage judges from ruling against the State lest doing so jeopardize their future livelihoods.[28] Such power could also, the Court believed, result in a virtual nullification of the administrative

---

[25] *See id.* at 583 n.2 (quoting pre-1991 version of TEX. GOV'T CODE § 74.053) (bracketed material omitted).

[26] *Id.* at 587.

[27] *Id.*

[28] *Id.*

presiding judges' power of assignment.[29]  Second, the Court concluded that giving the parties in a criminal case this right could result in automatic continuances, which would result in incarcerated defendants spending more time in overcrowded county jails.[30]  The Court contrasted the situation with civil cases, where delay might cause inconvenience or loss of income "but seldom loss of liberty."[31]

For all of these reasons, *Lanford* held that § 74.053(d) did not apply to criminal cases.[32]  And because the statute did not apply to criminal cases, the State was not entitled to have the visiting judge removed under that statute.[33]  And because the court of appeals granted mandamus relief to the State to have the visiting judge removed, the visiting judge was entitled to mandamus relief ordering the court of appeals to rescind its mandamus order.[34]

Because mandamus does not lie to resolve questions of unsettled law, one might ask whether *Lanford*'s pronouncement that § 74.053(d) does not apply to criminal cases was *dictum*.  *Lanford* was a mandamus action seeking to undo a lower court's mandamus order.[35]  In deciding whether a lower court must rescind a mandamus order, "we essentially undertake a de novo review of the lower

---

[29]  *Id.*

[30]  *Id.*

[31]  *Id.*

[32]  *Id.* ("For these reasons, we interpret § 74.053(d) not to apply to criminal cases.").

[33]  *Id.*

[34]  *Id.* at 588.

[35]  *See id.* at 583-84.

court's application of the two-pronged test for mandamus."[36]  Ultimately, then, *Lanford*'s holding was one that defeated a primary mandamus action.  To defeat mandamus, *Lanford* could have held that § 74.053(d) was unclear and that it *arguably* applied only to civil cases.[37]

But *Lanford* clearly went farther than that, concluding that § 74.053(d) did not *in fact* apply to criminal cases because it in fact applied only to civil cases.[38]  And that conclusion, along with the statutory construction analysis leading up to it, "was an analytical step to reach the result" of denying mandamus.[39]  Although such an analytical step can still be *dictum* if the conclusion arrived at is "broader than necessary to resolve the case," the concern about broader-than-necessary conclusions is that "a court might not have carefully considered fact situations that vary substantially from the one before it."[40]  That concern does not apply in a mandamus situation when a court says that mandamus is defeated not merely because the statute does not clearly say what the relator claims but because the statute is in fact clearly against the relator's position.

Moreover, this Court has said that it is possible for extratextual sources to show that a textually ambiguous statute has an indisputable meaning so as to compel mandamus relief.[41]  While

---

[36]  *In re Yeager*, 601 S.W.3d 356, 358-59 (Tex. Crim. App. 2020).

[37]  *See*, *e.g.*, *id.* at 360-61 (Mandamus was improper against trial judge who construed statute as it related to municipal courts differently than the State because "Article 37.07 can be read to support both of these interpretations.").

[38]  *See supra* at n.32.

[39]  *See Ex parte Heilman*, 456 S.W.3d 159, 165 (Tex. Crim. App. 2015).

[40]  *Oliva v. State*, 548 S.W.3d 518, 524 (Tex. Crim. App. 2018).

[41]  *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 201 (Tex. Crim. App. 2003) ("Mandamus may lie to compel compliance with even an ambiguous statute if we can determine the 'clear and indisputable' meaning of the statute by resort to extratextual sources.").

the chances of that occurring would ordinarily be remote, in *Lanford*, both parties argued that the statutory language unambiguously supported their positions.[42]  Although this Court disagreed,[43] it would have been reasonable to think that there was a better-than-usual chance that extratextual sources might indisputably weigh in favor of one of the parties.  Thus, *Lanford* could legitimately analyze extratextual factors to determine whether they could indisputably establish that the textually ambiguous subsection (d) applied to criminal cases.  If, in doing that analysis, the Court determined that the factors went the other way—to show that subsection (d) applied only to civil cases—we see no impediment to the Court acknowledging that reality.

Importantly, the maxim that mandamus will not lie to settle unsettled law means that a question of unsettled law cannot be resolved in such a way as to *grant* mandamus.  But an issue of unsettled law could be resolved in the process of *denying* mandamus.  After all, the point of the rule about unsettled law is that there is no ministerial duty when the law is not clear about what to do.  Likewise, though, there is no ministerial duty if the law clearly does not impose such a duty.  The asymmetry between when to grant and when to deny mandamus is consistent with asymmetry in other contexts where the rules are designed to favor denying relief.[44]  So, it would not violate mandamus principles to decide that the State was not entitled to mandamus because the statute did

---

[42]  *See* 847 S.W.2d at 584.

[43]  *Id.* at 587.

[44] *Cf. Darcy v. State*, 488 S.W.3d 325, 327-38 (Tex. Crim. App. 2016) (Preservation of error is a systemic requirement.  The systemic nature of the requirement means that a first-tier appellate court may not *reverse* a judgment of conviction without first addressing any issue of error preservation."); *Roberts v. State*, 221 S.W.3d 659, 663-64 (Tex. Crim. App. 2007) (requirement to "set forth in detail the evidence in the case along with its reasons for concluding that the jury's verdict was contrary to the evidence" applies only when the appellate court reverses on factual insufficiency grounds, not when the appellate court rejects a claim of factual insufficiency).

not in fact accord the State the claimed avenue of relief. And that is what *Lanford* did.

**2. The reasoning in *Lanford* still applies after the statutory amendment.**

After amendment in 2003, the current version of § 74.053 reads:

(a) When a judge is assigned to a trial court under this chapter:

(1) the order of assignment must state whether the judge is an active, former, retired, or senior judge; and

(2) the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or part by the assigned judge.

(b) If a party to a *civil case* files a timely objection to the assignment, the judge shall not hear *the case*. *Except as provided by Subsection (d)*, each party to *the case* is only entitled to one objection under this section for that case.

(c) *An objection under this section* must be filed not later than the seventh day after the date the party receives actual notice of the assignment or before the date the first hearing or trial, including pretrial hearings, commences, whichever date occurs earlier. The presiding judge may extend the time to file an objection under this section on written motion by a party who demonstrates good cause.

(d) An assigned judge or justice who was defeated in the last primary or general election for which the judge or justice was a candidate for the judicial office held by the judge or justice may not sit *in a case* if either party objects to the judge or justice.

(e) An active judge assigned under this chapter is not subject to an objection.

(f) For purposes of this section, notice of an assignment may be given and an objection to an assignment may be filed by electronic mail.

(g) In this section, "party" includes multiple parties *aligned in a case* as determined by the presiding judge.[45]

Key aspects of the statute that was construed in *Lanford* remain the same in the present

version of the statute. Subsection (b), with its reference to civil cases and its "except" clause, is

---

[45] TEX. GOV'T CODE § 74.053 (emphasis added).

unchanged.  Subsection (d) changes the subject of the sentence but retains the predicate unchanged.  In other words, for subsection (d), the subject, "A former judge or justice who was not a retired judge," is replaced with the subject, "An assigned judge or justice who was defeated in the last primary or general election for which the judge or justice was a candidate for the judicial office held by the judge or justice."   But the predicate, "may not sit in a case if either party objects to the judge or justice," is the same in both versions of the statute.

*Lanford*'s construction of the former version of the statute clearly turned upon the meaning of subsection (b) and of the predicate in subsection (d), not the subject in subsection (d).  From a textual standpoint, the question is whether "in a case" in subsection (d) refers back to "civil cases" in subsection (b).  Thus, merely changing the subject of subsection (d) has no effect on the relevant structure of the statute that *Lanford* construed and, so, does not impact *Lanford*'s statutory-construction holding.  And to the extent the "except" clause in subsection (b) helped color the meaning of subsection (d), nothing has changed in the structure of the statute that would affect that conclusion.

 "When the Legislature revises a particular statute that has been judicially construed, without changing the construed language, it is presumed that the Legislature intended that the same construction should continue to be applied to that statute."[46]  Because *Lanford*'s construction turns upon parts of the statute that remain the same after the 2003 amendment, we must presume that the Legislature did not intend to displace that construction.  Moreover, had the Legislature intended to displace *Lanford*, it could have easily revised the statutory language to make that clear.  The Legislature could have revised subsection (d) to say:

---

[46] *Watkins v. State*, 619 S.W.3d 265, 281 (Tex. Crim. App. 2021).

> An assigned judge or justice who was defeated in the last primary or general election for which the judge or justice was a candidate for the judicial office held by the judge or justice may not sit in a *civil or criminal* case if either party objects to the judge or justice.[47]

And while this change is not the only way the Legislature could have accomplished such a goal, the fact remains that the Legislature did not change the statute in any way that differs *materially* from the one *Lanford* construed.[48]

The State suggests that Relator has not comprehensively canvassed the legislative history of the 2003 amendments and that it is possible that a committee hearing or a floor debate would shed light on the Legislature's intent in a way that would be favorable to the State. Relator has proffered written legislative history in the form of journal entries and bill abstracts and has submitted audio and video recordings from committee hearings in the Texas House of Representatives and the Texas Senate and of proceedings on the House floor. None of the written materials talk about whether §

---

[47] Words that could have been added are emphasized.

[48] The dissent claims that the Legislature would be more likely in the amending process to look at a provision of the Texas Constitution addressing the power of County and District Attorneys and a case that construed that provision to hold the Speedy Trial Act unconstitutional than to look at *Lanford*. *See* TEX. CONST. art. V, § 21; *Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987). We strongly disagree with the notion that the Legislature would be more likely to look at a constitutional provision and case that do not address the issue at hand than at an on-point case that construes the statutory provision being amended. Moreover, as the dissent cites, the County/District Attorney constitutional provision says "in *all* cases," TEX. CONST. art. V, § 21 (emphasis added), containing the word "all," which is not found in § 74.053(d). *See supra* at n.45 and accompanying text. And this constitutional provision does not contain the word "civil," *see* Tex. Const. art. V, § 21, so there is no reason to think that there is a limitation in that regard. While subsection (d) of § 74.053 does not contain the word "civil," it refers to the subsection (b) that does, and as shall be explained later, at least one other subsection of § 74.053 seems to use the word "case" to refer to a "civil" case. Also, the various subsections of § 74.053 at least arguably interact with each other so that the statute should be construed as a whole, with the word "civil" potentially having influence throughout the statute. The County/District Attorney provision does not seem to share that sort of close relationship with adjacent provisions of the Texas Constitution. *See* TEX. CONST. art. V, §§ 20 (County Clerk), 22 (repealed), 23 (Sheriffs).

74.053(d) was intended to apply to criminal cases, and Relator represents that he has found nothing in the audio and video recordings that specifically talks about whether the scope of the statute would be expanded to cover criminal proceedings. But, given the presumption that the Legislature did not intend to displace *Lanford*, it is the State that needed to proffer materials to rebut that presumption, if it can be rebutted. And in any evaluation of legislative history, we must consider the fact that, given *Lanford*, this Court is not writing on a clean slate.[49] It is doubtful that a stray comment by a legislator in a hearing or on the floor about possible application to criminal cases would overcome the presumption in this case that *Lanford* still applies. As it is, no one has shown that even a stray comment to that effect exists.

### 3. Sufficient grounds do not exist to overrule *Lanford*.

"[A] judicial construction of a statute is the law, unless we decide to overrule it."[50] As we have explained earlier, a court cannot grant mandamus relief by resolving an unsettled issue of law. That proposition necessarily means that a court cannot justify granting mandamus by overruling precedent, as such an overruling would essentially unsettle the law and then settle it differently. But as we explained earlier, the rule against settling unsettled law works in only one direction—as a rule that makes obtaining mandamus more difficult. Nothing prevents a court from *defeating* mandamus relief by overruling precedent. So, we now ask whether *Lanford* should be overruled. We answer

---

[49] *See Williams v. State*, 273 S.W.3d 200, 215 (Tex. Crim. App. 2008) ("When a court is called upon to deviate from a plain meaning analysis, it can examine, among other matters: the object sought to be attained; the circumstances under which the statute was enacted; the legislative history; common law or former statutory provisions, including laws on the same or similar subjects; and the consequences of a particular construction. In conducting our inquiry, we keep in mind that we are not writing on a clean slate; we must take into account prior cases.").

[50] *Jones v. State*, 323 S.W.3d 885, 888-89 (Tex. Crim. App. 2010).

that question "no."

The doctrine of *stare decisis* indicates a judicial preference for maintaining consistency with past decisions.[51] Precedent may be overruled if the reasons for doing so are weighty enough.[52] Factors that support the overruling of precedent include:

(1) that the original rule or decision was flawed from the outset,

(2) that the rule's application produces inconsistent results,

(3) that the rule conflicts with other precedent, especially when the other precedent is newer and more soundly reasoned,

(4) that the rule regularly produces results that are unjust, that are unanticipated by the principle underlying the rule, or that place unnecessary burdens on the system, and

(5) that the reasons that support the rule have been undercut with the passage of time.[53]

We keep in mind that "the interests of *stare decisis* are at their height for judicial constructions of legislative enactments upon which the parties rely for guidance in conforming to those enactments."[54] Part of the rationale for the strong tendency to adhere to a judicial construction of a statute is that, "if the Legislature did not agree with the judicial interpretation, it would have acted to change the statute."[55] Overruling a case that construes a statute is rare, but it does occasionally

---

[51] *Thompson v. State*, 236 S.W.3d 787, 792 (Tex. Crim. App. 2007).

[52] *Grey v. State*, 298 S.W.3d 644, 646 (Tex. Crim. App. 2009).

[53] *Id.*

[54] *Jones*, 323 S.W.3d at 889.

[55] *Id.* at 888.

happen.[56]

To the extent the above-cited factors two through four apply at all, they weigh in favor of retaining *Lanford*. The rule that § 74.053(d) applies only to civil cases produces different results in criminal and civil cases, but § 74.053(b) already produces such results, and the point in *Lanford* is to construe subsections (b) and (d) consistently. To the extent *Lanford* produces different results, that difference is a principled one based on the statutory language. Also, there is no newer precedent from this Court that conflicts with *Lanford*, and the *Lanford* rule is easy to apply—since it simply eliminates § 74.053(d) as a basis for challenging a judge in a criminal proceeding.

That leaves whether the decision was flawed from the outset and whether the reasons for the rule have been undercut by the passage of time. We first conclude that—regardless of whether one agrees with *Lanford*—the decision is entirely defensible from a legal standpoint, and so, is not "flawed." *Lanford* cited our seminal case on statutory construction—*Boykin*[57]—and purported to follow it—looking at the plain meaning of the statutory text and resorting to extratextual factors only after finding the language to be ambiguous.[58] *Lanford* did not spend much time deciding that the statute was "classically ambiguous," but it had previously recited the parties' arguments, and the combination of those arguments do seem to suggest that the statutory language was susceptible to

---

[56] *See Blake v. State*, 971 S.W.2d 451, 454, 458-61 (Tex. Crim. App. 1998) (abolishing juvenile exception to statutory accomplice-witness rule).

[57] *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991).

[58] *Lanford*, 847 S.W.2d at 586-87. *See Boykin*, 818 S.W.2d at 785 (Courts must give effect to the plain meaning of a statute's text unless the text is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended.). The dissent says that the *Lanford* court invoked the "absurd results" rule as justification for resorting to extratextual factors. That is incorrect. *Lanford* simply mentioned "absurd results" as part of a complete statement of the *Boykin* rule of statutory construction. *See Lanford*, *supra* at 587.

two different interpretations.[59] After finding the language ambiguous, *Lanford* first considered statutory history (the prior version of the statute),[60] which we have since held is the most important extratextual factor.[61] Under the prior version of the statute, the objection that was authorized clearly (and in fact, indisputably) applied only to civil cases.[62] *Lanford* then considered the legislative

[59] *See id.* at 584, 587. The dissent says that the parties and the lower courts in *Lanford* agreed that the statutory language was plain. But the parties had diametrically opposed positions on what the statute meant. *See supra* at nn.23, 24. Each party saying that the other is unambiguously wrong is not the sort of "agreement" that inspires confidence in a particular construction of a statute. Similarly the lower courts also disagreed on the statute's meaning—with the requested strike of the visiting judge being denied at the trial level and the court of appeals requiring the strike. *See Lanford*, *supra* at 583 ("On the afternoon of July 6, Judge Walker overruled Holmes' objections and announced that Lanford would [p]reside in the criminal case of *State v. Michael Wayne Penrice* beginning July 7. . . . The court of appeals granted a stay of the proceedings in *Penrice* on July 7, and on August 10 the court lifted the stay and conditionally granted a writ of mandamus, on the basis of § 74.053(d), ordering Lanford to step down.") (ellipsis inserted).

[60] *See id.* at 587.

[61] *Cont'l Heritage Ins. Co. v. State*, 683 S.W.3d 407, 411 (Tex. Crim. App. 2024) ("If called upon to look beyond the plain meaning of the text, we look initially to statutory history, which narrowly involves looking at prior versions of the statute.").

[62] *Lanford*, 847 S.W.2d at 587. The dissent says that because the statute is in the Government Code, it must apply to both civil and criminal cases. The dissent also suggests that it is absurd to think that the Legislature wanted a judge-disqualification statute to apply in a civil slip-and-fall case but not in a weightier criminal case. Both of these complaints are seriously undercut by the fact that the pre-1991 versions of the statute indisputably applied only to civil cases. Further undercutting these complaints are some post-1991 amendments that appear to be aimed at civil cases. Before 1987, the statute, then contained in the Court Administration Act in the Revised Civil Statutes, gave parties in a civil case unlimited strikes against visiting judges, regardless of whether the judge was an active judge or a former judge. *See State v. Preslar*, 751 S.W.2d 477, 479 (Tex. 1988) ("Prior to the 70th legislative session, the statute authorized unlimited objections to assigned judges.") (also quoting text of statute not distinguishing between active and former judges). The 1987 amendments moved the statute to the Government Code and limited this civil-cases-only strike to one per party. *Id.* at 482. So even after moving the statute to the Government Code and tinkering with it, the Legislature still left it indisputably applying only to civil cases. The 1991 amendments added subsection (d), described in *Lanford*. Whatever else one might think subsection (d) did, it indisputably effectuated an exception to the one-strike-per-party rule for civil cases. And in the 2003 amendments, the legislature added two other provisions that, aside from subsection (d), appear to

history of the 1991 amendments and found nothing in that history suggesting an intent to apply subsection (d) to civil *and* criminal cases.[63]  After looking at statutory and legislative history, *Lanford* turned to the consequences of construing the statute to apply to criminal cases—a legitimate, though not pre-eminent extratextual factor[64]—and found two significant adverse consequences.[65] Both consequences—giving the State inordinate power and creating automatic continuances—are at least facially legitimate.[66]  And as we have already explained, *Lanford*'s holding is not inconsistent

---

be aimed at civil cases: (1) exempting active judges from an objection, and (2) allowing multiple parties to be "aligned."  We address party alignment later in this opinion and explain why it appears to be aimed at civil cases.  As for exempting active judges, while it is possible that a judge who lost the last election in which he was a candidate could be an active judge by virtue of an appointment by the Governor, the judges affected by this statutory change are overwhelmingly active judges from other courts who would, without such language, be subject to exclusion under the indisputably civil-only provision in subsection (b).  All of these changes could easily be considered suggestive of legislative fine-tuning of a civil-only statute.

*And even under the dissent's interpretation*, civil litigants have broader power to challenge visiting judges than criminal litigants do, by virtue of subsection (b).  There is no avoiding the fact that the Legislature favors civil litigants when it comes to the ability to reject a visiting judge.

[63]  *Lanford*, 847 S.W.2d at 587.

[64]  *See State v. Green*, 682 S.W.3d 253, 264 (Tex. Crim. App. 2024) ("Extra-textual factors that we may consider to resolve ambiguity include: (1) the object sought to be attained by the Legislature; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) the administrative construction of the statute; and (7) the title or caption, preamble, and any emergency provision.").

[65]  *Lanford*, 847 S.W.2d at 587.

[66]  *See id.*  The dissent suggests that the concern about the State having inordinate power applies equally to large local law firms in civil cases.  We disagree.  We find it highly unlikely that a large law firm would come even close to participating in every civil case before a particular court. If that were to happen, it would be an unusual situation limited to a particular locale and for a limited period of time.  And if that were to happen, such a law firm would not be representing the same party in every case, and so the interest of the law firm would likely vary across cases.  But absent an unusual case in which the prosecuting office is disqualified, the prosecuting office would represent the State in all criminal cases in the court in which the prosecuting office practices.  And that would

with its posture as a mandamus case.

As for the passage of time, nothing can be pointed to aside from the latest statutory amendment and its history. As we have already explained, there is really nothing to suggest that the statutory amendment changed which type of cases subsection (d) applies to. And while the legislative history contains some expression of concern for allowing recently defeated judges to preside over cases, that concern was also present when the statute was previously amended in 1991.[67] Although that concern might have become heightened, that heightening does not alone suggest that the statute was intended to apply to criminal cases.

Further, the new subsection (g) arguably adds some support for the conclusion that all objections under § 74.053 apply only to civil cases. Subsection (g) appears to allow the trial court to treat multiple parties in a case as "aligned" for the purpose of lodging an objection to a visiting judge.[68] Alignment seems to matter only when objections are limited, e.g., when "aligned" parties count as a single "party" having to share a single objection. Only subsection (b) prescribes a limit on objections—limiting each "party" to one objection—and subsection (b) indisputably applies only

---

be true as a matter of course across the state.

    The dissent suggests that the concern about continuances could be obviated by assigning a judge who cannot be challenged under subsection (d). That is tantamount to suggesting that a particular construction of a statute is okay so long as the courts ensure that the statute is never used. That sort of reasoning hardly inspires confidence in the posited construction of the statute.

    Regardless, it is not necessary to prove that the articulated "consequences of a particular construction" concerns are unassailable. To avoid a conclusion that the *Lanford* decision is flawed, it is enough that those concerns are at least facially legitimate.

    [67] *See Mitchell Energy Corp.*, 943 S.W.2d at 439-40 ("Section 74.053 clearly is intended to give parties the right to veto the assignment of certain former judges. The problem which motivated the legislation was the perceived abuse of the assignment system, in particular the use of judges who had been recently rejected by the electorate.").

    [68] *See supra* at n.45 and accompanying text.

to "civil" cases.[69] But subsection (g) simply refers to "a case," without the "civil" modifier. So, if subsection (g) is in fact a civil-only provision, then its nonspecific reference to "case" would be consistent with the word "case"—in subsections following subsection (b)—being a reference back to subsection (b)'s "civil cases" language.

And, as we explained earlier, if the Legislature disagrees with *Lanford* and wants subsection (d) to apply to both civil and criminal cases, it can easily fix the issue by simply inserting the phrase "civil or criminal" in front of the word "case" in subsection (d).

The upshot of this discussion is that the relevant *stare-decisis* factors favor retaining *Lanford*'s holding.[70] Consequently, we decline to overrule *Lanford.*

---

[69] *See id.*

[70] The dissent also contends that *Lanford* ignored constitutional concerns arising from its interpretation. To the contrary, *Lanford* addressed and rejected a complaint that its construction violated the Texas Constitution. 847 S.W.2d at 587-88. And in fact, two constitutional provisions purport to confer or recognize the legislative power to permit the assignment of former judges to cases. TEX. CONST. art. V, § 1-a(1) ("Subject to the further provisions of this Section, the Legislature shall provide for the retirement and compensation of Justices and Judges of the Appellate Courts and District and Criminal District Courts on account of length of service, age and disability, *and for their reassignment to active duty where and when needed*.") (emphasis added); *id.* § 1-a(6)(c) ("The law relating to the removal, discipline, suspension, or censure of a Justice or Judge of the courts established by this Constitution or created by the Legislature as provided in this Constitution applies to a master or magistrate appointed as provided by law to serve a trial court of this State *and to a retired or former Judge who continues as a judicial officer subject to an assignment to sit on a court of this State*. Under the law relating to the removal of an active Justice or Judge, the Commission and the review tribunal may prohibit *a retired or former Judge* from holding judicial office in the future or from sitting on a court of this State by assignment.") (emphasis added). If the Legislature wishes to limit the ability to challenge a visiting judge to civil cases, nothing in the Texas Constitution forbids that.

The dissent criticizes *Lanford* for citing to a provision of the Texas Constitution relating to the Judicial Conduct Commission. But, Texas Constitution § 1-a addresses a number of topics related to retirement and removal of judges, including assigning former judges to active duty and the workings of the Judicial Conduct Commission. *See id.* § 1-a. *Lanford* cited a subsection of that provision that deals with the Judicial Conduct Commission but also deals more generally with the application of the law relating to removal of masters, magistrates, retired judges, and former judges.

**4. We need not address the State's alternative basis for removing the visiting judge.**

The State contends that Judge Wright was not qualified to preside over a capital habeas proceeding because she has only been a county-court-at-law judge. The State argues that she lacks adequate training because her only experience is in a court that has a primary case load of domestic-violence cases. The State appears to be essentially invoking the "*Calloway* rule"—upholding the trial court on appeal if its ruling is correct on any theory of law applicable to the case "even if the trial court did not purport to rely on that theory and the prevailing party did not explicitly raise the theory."[71] The *Calloway* rule has also been called the "right ruling, wrong reason" rule.[72] Even assuming this direct-appeal rule could also apply to a mandamus action in an appropriate case,[73] it should not apply here because the administrative presiding judge has not had the opportunity to pass

---

*See* 847 S.W.2d at 587 & n.6 (citing and quoting TEX. CONST. art. V, § 1-a(6)(c)). *Lanford* did not cite subsection (1), which provides the core power to "reassign" to active duty, but to the extent there might be ambiguity as to whether subsection (1) applies to "former"—rather than only "retired"—judges, subsection (6)(c) clarifies that point by saying "retired or former judge."

As for not acknowledging federal or state equal-protection concerns, there is no indication that an equal-protection claim was raised in *Lanford*. *Lanford* addressed a claim that "no provision in the Texas Constitution allows for the assignment of former judges to sit as visiting judges in district courts." 847 S.W.2d at 587. It is not a flaw in decision-making to fail to address a claim that was not raised. Nor has the dissent actually shown that there is an equal-protection problem with allowing an objection only in civil cases, and *Lanford*'s articulation of unwanted consequences in criminal cases would seem to be a sufficient (though perhaps not the only) basis for drawing a distinction. And as we have already explained, even under the dissent's construction, civil litigants have the ability to challenge visiting judges in a way criminal litigants cannot, by virtue of subsection (b).

[71] *See State v. Castanedanieto*, 607 S.W.3d 315, 327 (Tex. Crim. App. 2020).

[72] *See Martell v. State*, 663 S.W.3d 667, 672 (Tex. Crim. App. 2022).

[73] *See In re State ex rel. Wice*, 668 S.W.3d 662, 688 (Tex. Crim. App. 2023) (Yeary, J., dissenting) (arguing that something similar to a "right ruling, wrong reason" rule should apply when assessing whether a trial court violated a ministerial duty warranting mandamus relief).

on Judge Wright's qualifications. The *Calloway* rule has limits. We have recognized that the *Calloway* rule should not apply when it would work a "manifest injustice" on the losing party, which occurs when the losing party is "deprived of an adequate opportunity to develop a complete factual record with respect to [the] alternative legal theory."[74] In the present case, Judge Ables removed Judge Wright for the sole and explicit reason that the State objected. He gave absolutely no consideration to Judge Wright's qualifications. Perhaps the record can be developed on that matter, and in any event, we think the administrative presiding judge, who is given the authority to assign judges, is best suited to make the initial determination on that question, especially where, as here, the relevant proceeding is at the beginning stages of the litigation.[75]

### D. Conclusion

We conclude that Relator has satisfied the requirements for obtaining mandamus relief. Judge Ables has a ministerial duty to rescind his order removing Judge Wright because that order was based solely on § 74.053(d), and as construed by *Lanford*, that provision does not apply to criminal cases. Nothing in our opinion today prevents Judge Ables from considering the removal of Judge Wright on some other basis. We order Judge Ables to rescind his current order removing

---

[74] *State v. Esparza*, 413 S.W.3d 81, 89 (Tex. Crim. App. 2013); *see also Castanedanieto*, 607 S.W.3d at 327.

[75] *See Wice*, 668 S.W.3d at 676 ("The Court Administration Act also provides several ways for a judge to be assigned. Chapter 74 allows the regional presiding judge of the administrative judicial region to assign a judge (including active district judges) to a district court or a specific case in his region. This explicit power exists in addition to the broad authority of a regional presiding judge to effectuate and 'improve the management of the court system and the administration of justice.'"). The dissent suggests that our holding infringes on Judge Ables's discretion to appoint a visiting judge. But Judge Ables believed he had no discretion and has said that he "welcomes" guidance on whether his discretion is foreclosed by § 74.053(d). To uphold the State's strike under the guise of "discretion" would be to perpetuate a fiction, which we are unwilling to do.

Judge Wright.  The writ of mandamus will issue only if Judge Ables fails to comply with this opinion.

Delivered: May 28, 2025
Publish